IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALFONCE LAMAR SMITH,
      Petitioner,

vs.                                 Case No. 3:07cv134/LAC/EMT

WALTER A. McNEIL,[1]
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer to the petition and relevant portions of the state court record (Doc. 11). Petitioner filed a reply (Doc. 15).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 11, Exhibits).[2] Petitioner was charged in the Circuit Court for

---

[1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2]Hereafter all references to exhibits in this Report will refer to the exhibits filed by Respondent with his answer (Doc. 11, Exhibits).

Escambia County, Florida, Case No. 01-5866-CF with one felony count of burglary of an unoccupied conveyance, one felony count of petit theft, and one misdemeanor count of resisting an officer without violence (Ex. A at 2). Following a jury trial, Petitioner was found guilty as charged (*id.* at 8). Petitioner was adjudicated guilty and sentenced on February 26, 2003, as a habitual felony offender to seven (7) years of imprisonment on the burglary count, with presentence jail credit of 226 days, a concurrent term of five (5) years of imprisonment on the petit theft count, and time served on the resisting an officer without violence count (*id.* at 24–25, 64–69).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"). Petitioner's counsel filed an initial brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967) asserting that he was unable to argue in good faith that reversible error occurred in the trial court which would support reversal of the conviction or sentence (Ex. C). Petitioner was provided an opportunity to file a pro se brief but declined to do so (*see* Ex. D). On July 26, 2004, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion, with the mandate issuing August 23, 2004 (Ex. A at 135–36). <u>Smith v. State</u>, 879 So. 2d 630 (Fla. 1st DCA 2004) (Table).

On December 1, 2004, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. A at 137–56). Following a limited evidentiary hearing, the trial court denied the motion in a written opinion rendered July 5, 2005 (*id.* at 188–255). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on November 14, 2006, with the mandate issuing January 30, 2007 (Exs. H, I). <u>Smith v. State</u>, 946 So. 2d 18 (Fla. 1st DCA 2006) (Table).

On February 12, 2007, Petitioner filed a motion for reduction of sentence pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. J). The trial court summarily denied the motion on February 22, 2007 (Ex. K).

Petitioner filed the instant federal habeas action on March 25, 2007 (Doc. 1 at 14).[3]

II.    STANDARD OF REVIEW

---

[3]The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

---

[4]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 496 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and

concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 496 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III. PETITIONER'S CLAIMS

<u>Ground One: "Defendant asserts appointed public defender Mr. Dennis J. Corder subjected the defendant to ineffective assistance of counsel when said public defender failed to convey plea bargain to his client Alfonce Lamar Smith."</u>

Petitioner claims he rejected a five-year plea offer from the State because he believed that the State could not impose habitual felony offender (HFO) sanctions, and the maximum sentence the charge carried was five years (Doc. 1 at 7–9).[5] Petitioner states that his belief that the State could not seek HFO sanctions was based upon erroneous advise from defense counsel, Mr. Corder, that the State could not seek HFO sanctions because the prosecutor had not served written notice of its intent to seek such sanctions (*id.*). Petitioner states if counsel had not misadvised him that the State could not seek HFO sanctions, he would have accepted the State's five-year plea offer instead of going to trial (*id.*).

Respondent concedes that Petitioner exhausted this claim in the state courts by raising it in his Rule 3.850 motion and in the appeal of the trial court's denial of the motion (Doc. 11 at 8). Respondent contends the state court's denial of the claims was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of Supreme Court law (*id.* at 8–16).

---

[5]Petitioner's burglary and petit theft charges were third degree felonies, and each charge carried a maximum sentence of five years (*see* Doc. 11, Ex. A at 2, 64). *See* Fla. Stat. § 775.082(3)(d). Pursuant to the habitual felony offender statute, the court may sentence a habitual felony offender to a term of ten (10) years for a third degree felony. *See* Fla. Stat. § 775.084(4)(a)3.

1.      Clearly Established Supreme Court Law

When a defendant challenges a guilty plea based upon allegations of ineffective assistance of counsel, the two pronged standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) applies.  The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other.  Strickland, 466 U.S. at 697.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  Id. at 697; Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  See Strickland, 466 U.S. at 691.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.  Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S.Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed.

2d 203 (1985) (quoting <u>McMann</u>, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." <u>Yordan v. Dugger</u>, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advise is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

To meet the prejudice prong of the <u>Strickland</u> standard in a plea situation, Petitioner must establish that prove that "counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Hill</u>, 474 U.S. at 59. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60. While counsel can be deemed ineffective under <u>Strickland</u> for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would have accepted the State's plea offer. *See* <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991); <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th Cir. 1991). Petitioner's conclusory, "after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *See* <u>Diaz</u>, 930 F.2d at 835; *see also* <u>Coulter v. Herring</u>, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement,

he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

2.      Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of counsel in his Rule 3.850 motion (Doc. 11, Ex. A at 145–50). In the state court's written opinion denying Petitioner's Rule 3.850 motion, the state court identified Strickland as setting forth the controlling legal standard for analyzing claims of ineffective assistance of counsel (id. at 189–90). The trial court found as fact that Petitioner's testimony during the evidentiary hearing that no one, including his first defense attorney (Ms. Stitt), his second defense attorney (Mr. Corder), the prosecutor, or the court, ever mentioned to him the possibility of habitual offender sentencing prior to trial was not credible (id. at 191). The court also disbelieved Petitioner's testimony that Mr. Corder advised him that he could not be habitualized because he was not provided pre-trial written notice from the State (id. at 191–92). The court further found as fact that Petitioner was offered a plea agreement of five years in state prison as a habitual felony offender; that Ms. Stitt and Mr. Corder discussed this offer with Petitioner; and that Petitioner declined the offer (id. at 192). The court also found that Petitioner was put on notice, by virtue of the plea offer itself and in-court discussions in which Petitioner participated, that he faced ten (10) years in prison as a habitual felony offender if he proceeded to trial and lost (id.). Additionally, the court determined that Petitioner failed to demonstrate he would have accepted the plea offer had he known he could be subject to an HFO sanction of a ten-year sentence if he went to trial, in light of his protestations on the record that he was innocent and would not accept a plea offer even if it offered him time served (id.).

Because the state court correctly identified Strickland as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

Initially, Petitioner has failed to come forward with clear and convincing evidence to rebut the state court's factual findings. Therefore, the court's factual findings, including the finding that

Petitioner failed to provide convincing evidence that Mr. Corder advised him that he could not be habitualized due to the lack of pre-trial written notice from the State, and the finding that Petitioner received notice, by virtue of the plea offer itself and in-court discussions in which he participated, that he faced ten (10) years in prison as a habitual felony offender if he proceeded to trial and lost, are presumed correct.  Additionally, the court's factual findings, including its determination that Petitioner's testimony at the evidentiary hearing was not credible, are supported by the state court record.  Petitioner testified at the evidentiary hearing that no one, including his first defense attorney (Ms. Stitt), his second defense attorney (Mr. Corder), the prosecutor, or the court, ever mentioned to him the possibility of habitual offender sentencing prior to trial (Ex. A at 169–73).  The portions of the transcripts from pre-trial hearings appended to the state court's written order on the Rule 3.850 motion demonstrate that Petitioner knew at the time the State's five-year plea offer was pending that the State could still seek habitual felony offender sanctions, which exposed him to a potential maximum sentence of ten (10) years, despite the fact that the State had not filed written notice of its intent to seek such sanctions (Ex. A at 196–230).  In light of the state court's well-supported findings, the state court's determination that Petitioner failed to show he was misadvised during the plea process was not unreasonable.

Additionally, Petitioner has failed to establish that the state court's determination that he failed to show he was prejudiced by counsel's allegedly erroneous advice was unreasonable.  In the state post-conviction proceeding and this federal proceeding, Petitioner failed to come forward with any objective evidence supporting his after-the-fact assertion that his decision to forgo the plea offer and proceed to trial was determined by his belief that the State could not seek HFO sanctions.  Furthermore, the state court record contains objective evidence suggesting that Petitioner would not have accepted the five-year plea offer regardless of his belief as to whether the State could seek HFO sanctions if he was convicted at trial.  At a pre-trial hearing on September 19, 2002, Petitioner repeatedly stated his intent to take the case to trial (*see* Doc. 11, Ex. A at 210–14, 218).  Petitioner even declared his intent to refuse any plea offer, "I'm not going to sign for deal [sic] I didn't do. . . . I'm not going to even accept a deal of time served . . . I wasn't fixing [sic] to go ahead and plead out and get this case over.  I'm not going to plea out to something I didn't do." (*see id.* at 208–11).  Indeed, he made clear that the only acceptable outcome to him was dismissal of the charges (*id.* at

210–11, 213).  At another pre-trial hearing on November 12, 2002, Petitioner again stated, "I'm not going to prison for something I didn't do." (*id.* at 199).  Although Petitioner's first defense attorney, Ms. Stitt, indicated at that hearing that Petitioner asked her to offer the prosecutor a guilty plea in exchange for a reduced charge of trespass and a sentence of time served, an offer which the prosecutor rejected (*see id.* at 198), there is no evidence that Petitioner would have accepted the State's plea offer of five years in exchange for a plea to the original burglary charge, which was the offer presented by the State, if he had known the State could seek HFO sanctions.  In light of Petitioner's continued protestations of innocence and statements indicating his intent to take the case to trial, and the absence of any objective evidence indicating that prior to trial he expressed any desire to plead to the burglary charge in exchange for a five-year sentence, the state court's determination that Petitioner failed to show prejudice resulting from counsel's alleged misadvice was not an unreasonable application of <u>Strickland</u>.  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

> <u>Ground Two:</u>  "Defendant asserts appointed public defender Dennis J. Corder subjected the <u>defendant to ineffective assistance of counsel when said public defender failed to properly</u> <u>advise his client Alfonce Lamar Smith concerning the State's oral notice of intent seeking</u> <u>imposition of habitual felon [sic] offender sanctions.</u>

Petitioner additionally contends defense counsel erroneously advised him to waive his right to challenge the State's seeking HFO sanctions at the sentencing hearing on the following grounds: (1)  the law required written notice to be served prior to the sentencing date, and the State did not provide written notice until the date of sentencing, and (2)  the State's prior oral notice did not constitute sufficient notice because the oral notice was a "shotgun notice, encompassing all sentencing schemes under Fla. Statutes Section 775.084" and did not give him useful notice of which particular sanctions the State intended to seek (*id.*).  Petitioner contends defense counsel should have presented these arguments to the sentencing court before advising him to waive his right to challenge the sufficiency of the State's notice (*id.* at 12).

Respondent concedes that Petitioner exhausted this claim in the state courts by raising it in his Rule 3.850 motion and the appeal of the trial court's denial of the motion (Doc. 11 at 16). Respondent contends the state court decision denying the claim was not based upon an unreasonable

determination of the facts, nor was it contrary to or an unreasonable application of Supreme Court law (*id.* at 16–21).

> 1.      Clearly Established Supreme Court Law

As previously discussed, claims of ineffective assistance of counsel are governed by the two-pronged Strickland standard.  To establish a constitutional claim of ineffective assistance of counsel, Petitioner must satisfy the performance and prejudice prongs.  Strickland, 466 U.S. at 697.  The focus of inquiry under the performance prong is whether counsel's assistance was "reasonable considering all the circumstances."  *Id.* at 691.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did . . . were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did . . ., no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Strickland, 466 U.S. at 693.  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.

2.  Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of counsel in his Rule 3.850 motion (Doc. 11, Ex. A at 151–55). In the written opinion denying Petitioner's motion, the trial court found as fact that the State's written notice of its intent to seek HFO sanctions was not filed until the day of sentencing; however, the sentencing court offered to continue the sentencing hearing to provide Petitioner time to prepare (*id.* at 192). The state court also found that Petitioner personally decided to proceed with sentencing the day the State's HFO notice was filed, as evidenced by the transcript of the sentencing hearing (*id.* at 192–93). Additionally, the court determined that Petitioner did not have a meritorious basis to appeal the notice issue because, according to Florida law, lack of written notice is harmless error if a defendant and his counsel had actual notice of the State's intention to seek HFO sanctions, and Petitioner and his counsel had such notice (*id.* at 193) (citing Massey v. State, 609 So. 2d 598 (Fla. 1992) and Lewis v. State, 636 So. 2d 154 (Fla. 1st DCA 1994)). Furthermore, Petitioner was provided sufficient notice of the actual HFO sanction sought by the State, as evidenced by several examples in the record of the prosecutor's and the court's discussing with Petitioner the possibility of a **habitual felony offender** sanction, which consisted of a maximum of ten years in prison (*id.* at 194) (emphasis in original state court order). The court therefore concluded that Petitioner failed to demonstrate that counsel performed deficiently by advising him to waive his right to challenge the State's seeking HFO sanctions on grounds of insufficient notice, and he failed to show he was prejudiced by counsel's alleged error (*id.* at 193–94).

Initially, Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence; therefore, those findings are presumed correct. Additionally, this court must defer to the state court's determinations of state law issues, including the state court's determination that Petitioner had no meritorious basis to appeal the sufficiency of the State's HFO notice. Although an ineffective assistance of counsel claim is a federal constitutional claim, which the court considers in light of the clearly established rules of Strickland, when "the validity of the claim that

[counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (emphasis added) (superseded on other grounds); *see also* Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1354–55 (11th Cir. 2005); Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them . . ." (quotation and omitted)). Put another way, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992); Hunt v. Tucker, 93 F.3d 735, 737 (11th Cir. 1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation).

In light of the state court's determination that Petitioner did not have a meritorious basis under state law for challenging the sufficiency of the State's notice of its intent to seek HFO sanctions on either ground, Petitioner failed to show that counsel's advising him to waive his right to challenge the sufficiency of the notice constituted deficient performance, or that he was prejudiced by counsel's advising him to waive the notice issues. Therefore, Petitioner failed to demonstrate that the state court's denial of this ineffective assistance of counsel claim was an unreasonable application of Strickland.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 27th day of October 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.** **<u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>** **A copy of objections shall be served upon the magistrate judge and all other parties.** **Failure to object may limit the scope of appellate review of factual findings.** ***See*** **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**